UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DONALD EDWARD SWATHWOOD, #362444**

      Petitioner,

                                        Civil No: 04-CV-72251
                                        Honorable Gerald E. Rosen

v.

**BLAINE LAFLER**,

      Respondent.
_____

### OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This matter is before the Court on Petitioner Donald Swathwood's *pro se* request for habeas relief pursuant to 28 U.S.C. §2254. Respondent filed his "Answer in Opposition to Petition for Writ of Habeas Corpus," and Petitioner filed a "Traverse to the Answer." Swathwood and his co-defendant, Lewis Rodney Gagne, were each charged with three counts of first-degree criminal sexual conduct, and were tried together in Ingham County Circuit Court. Following a jury trial, Swathwood was convicted as charged and was sentenced to three concurrent terms of fifteen to thirty years' imprisonment.[1]

Petitioner Swathwood now raises six claims for habeas review: (1) whether the trial court erred in refusing to allow the defense to introduce certain evidence about the complainant; (2) whether the prosecutor's comments during closing arguments denied Petitioner his due process right to a fair trial; (3) whether Petitioner's verdict was against the great weight of the evidence; (4)

---

[1] Gagne was convicted of two counts and acquitted of one count of first degree criminal sexual conduct. He was sentenced to two concurrent terms of twenty-two years and five months to forty-five years.

whether there was cumulative error; (5) whether Petitioner's offense variables were improperly scored; and (6) whether Petitioner's sentence was disproportionate. Respondent argues that Petitioner's claims may not be considered for habeas review as they are procedurally defaulted.

Upon review of the pleadings and for the reasons set forth below, the Court will deny Petitioner's request for habeas relief.

## II. Pertinent Facts

Petitioner Swathwood's conviction arises out of an alleged sexual assault which took place at the complainant's home in Lansing, Michigan the night of July 3, 2000 and into the early morning hours of July 4, 2000. Swathwood and his co-defendant, Lewis Gagne, were accused of engaging in a non-consensual "threesome" sexual act with the complainant. The alleged sexual assault took place over the course of several hours and included oral, vaginal and anal sex, as well as the use of various objects or "sex toys" which were used for the purpose of penetrating the complainant. It is undisputed that Swathwood, Gagne and the complainant had been ingesting alcohol and various drugs over the course of the evening (i.e., marijuana and cocaine), although the complainant denied smoking any "crack cocaine."

The complainant and Petitioner's co-defendant, Lewis Gagne, had had a relationship that lasted approximately six months prior to July 3, 2000, but they had broken off their relationship, two or three weeks before that date. The complainant admitted at trial, however, that she engaged in some voluntary sex acts with Gagne on the night in question, but she claimed that the subsequent sexual activity with Petitioner Swathwood and Gagne was involuntary.

At trial, the prosecution presented the testimony of several witnesses, including the complainant, her son, her personal physician, the police officer who was dispatched to the

complainant's home, the emergency room physician who examined the complainant, and the detective who conducted the post-incident investigation.

According to the trial testimony, the complainant spoke with her adult son, Chadwick Bement, by telephone about noon on July 4, 2000. Although she did not sound good to Bement, she did not mention Petitioner or Gagne during the conversation, and did not say that she had been beaten. She went to see Bement the next day, July 5, 2000. She then told him that Gagne and his friend, Petitioner Swathwood, had held her down, beat her, and raped her. She cried and winced as if in pain when she talked about the incident.

The complainant went to see her personal physician, Dr. Paul Harkerson, later in the afternoon of July 5. Dr. Harkerson testified that the complainant cried and appeared upset when she informed him that she had been sexually assaulted by her boyfriend and his friend. She complained of vaginal and rectal bleeding and multiple bruises from the assault. Dr. Harkerson testified that the bruises he observed were approximately 36 hours old. Dr. Harkerson prescribed medication for the complainant's anxiety, inability to sleep, and upset stomach, and he and the complainant agreed to notify the police about the incident.

Police officer Joel Johnson was dispatched to the complainant's home the evening of July 5, 2000. He testified that the victim was upset when he interviewed her. She informed Officer Johnson that she had told Gagne and Petitioner to stop what they were doing, but they merely laughed at her and continued to assault her after suggesting that she perform oral sex on David Stout, who was also present in the complainant's home, and an eyewitness to the on July 4 incident in question.

Officer Johnson took the complainant to the hospital where she was examined. The emergency room physician, Anthony Izokaitis, testified that he observed bruises on the

3

complainant's breast and buttock, and that the age of these bruises was consistent with the timeline presented by the complainant. Dr. Izokaitis testified that the complainant was distraught when she described the sexual assault to him, and she complained of pain.

Detective Jex testified that the complainant was still upset when he attempted to take a statement from her several days after the alleged assault. Jex also spoke with Petitioner, his co-defendant, and David Stout on July 10 and 11, 2000. Jex testified that both Petitioner and Gagne admitted in separate interviews that they had sexual relations with the complainant, but they stated that the sexual contact was consensual. David Stout was an eyewitness to the alleged sexual assault, but was reluctant to provide Detective Jex with any details about the incident.

Petitioner and Gagne advanced a consent defense. They both testified at trial themselves, and they also called Susan Craft, a friend of the complainant, to testify on their behalf. Craft testified that the complainant once informed her that she, Petitioner, Gagne, and two other women once had an orgy and that the complainant performed oral sex on Swathwood during the incident. David Stout testified that he did not have a good memory of the events on July 4, 2000, but he admitted to seeing Petitioner and Gagne perform sex acts with the complainant in her living room. He stated that the complainant tried to perform oral sex on him and that he thought about doing something with her, but changed his mind because he was not aroused. Later, he went into the bedroom briefly when the other three were in there, to ask about the stereo. He claimed, however, that he could not see what was happening in the bedroom, and that he did not hear the complainant protest or ask for help.

The defendants also sought to admit evidence of the complainant's prior consensual participation in group sex or a "threesome" with Gagne and other third persons (not Petitioner). They argued that the complainant's prior consensual participation in threesome sex showed that the

complainant was not averse to such conduct and was probative of whether she consented to the sexual activity giving rise to the charges against them.

The trial court ruled that the defendants could present evidence concerning an incident in June of 2000, when the complainant, Swathwood, Gagne and two other women engaged in a group sexual activity after drinking at Tony's Lounge, but denied a request to admit evidence regarding two other group sex incidents, neither of which involved Petitioner -- one incident being a threesome involving complainant, Gagne, and a man named Ruben Bermudez, and a second incident in which the complainant attempted to persuade Gagne's father to engage in sex with her and Gagne.[2]

### III. Procedural History

As indicated, Petitioner and his co-defendant, Gagne, had a joint jury trial in Ingham County Circuit Court and were both convicted on charges of criminal sexual conduct. Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals and posed the same above stated issues that are presently before the Court on habeas review. On April 15, 2003, in a single unpublished opinion, the Michigan Court of Appeals affirmed both Petitioner's and co-defendant's convictions. *People v. Swathwood,* 2003 WL 1880143, Mich. Ct. App. Nos. 235540, 235541 (per curiam) (April 15, 2003). However, Petitioner's case was remanded in order to address a sentencing issue. He was originally sentenced to 15 years to 30 years, but that term of imprisonment was modified on remand to 13.7 years to 30 years.

Petitioner attempted to file an application for leave to appeal with the Michigan Supreme Court relative to the same appellate issues. Pursuant to M.C.R. 7.302(C)(2), Petitioner's application

---

[2] Only Gagne moved for admission of evidence of these latter two incidents. Petitioner Swathwood's motion *in limine* and offer of proof concerned only the June 2000 Tony's Lounge incident, evidence of which, as indicated, was admitted at trial.

was due no later than on June 10, 2003 (56 days following the Michigan Court of Appeals' April 15, 2003 opinion). The Michigan Supreme Court sent correspondence dated June 24, 2003 stating that Petitioner's application was untimely and would not be accepted pursuant to MCR 7.302(C)(3). (Habeas Petition, Appendix D). Petitioner admits that his application was not filed timely and offers no explanation, justification or "cause" for his failure to comply with the state court rules in this regard. Petitioner states as follows:

> "[P]etitioner apparently did miss the deadline and therefore failed to comply with the state procedural rule.
>
> It should be noted that Petitioner did attempt to file his pleading with the Michigan Supreme Court, but the pleading was rejected by the Deputy Clerk as untimely with no exception to the 56 day limit. [ ] Therefore, the pleading was not rejected by the court as untimely, but by an administrator, the Deputy Clerk.

(Traverse to the Answer, pg. 2)

Both Petitioner and his co-defendant filed separate *pro se* habeas petitions raising similar issues for habeas review. One of the common issues in both petitions was whether the trial court erred in refusing to allow the defense to present to the jury certain evidence of "threesome" sexual activities involving the complainant: specifically evidence of (1) the "threesome" involving the complainant, Gagne and a gentleman named Ruben Bermudez and (2) the complainant's invitation to co-defendant Gagne's father to engage in a "threesome" with her and Gagne.[3]

---

[3] As noted above, Petitioner Swathwood did not raise either of these two threesome incidents in his *in limine* motion at trial. Notwithstanding his failure to raise these issues at trial, the Michigan Court of Appeals apparently allowed Swathwood to join in his co-defendant's arguments as the appellate court's opinion framed the issue on appeal in the plural:

> *Defendants* argue that the trial court erred in excluding that the complainant participated in group sex or a "threesome with defendant Gagne and a third person, Ruben Bermudez. . . .

Co-defendant Gagne's habeas case was resolved on July 2, 2007 wherein a judgment was entered conditionally granting his request for habeas relief, and ordering that Gagne be released unless the State retried him within ninety days. *Gagne v. Booker,* 2007 WL 1975035 (E.D. Mich. July 2, 2007) (Battani, J.).[4]  The court held that Gagne's "right to present a full and meaningful defense was violated by the exclusion of evidence about Ruben Bermudez and [Gagne]'s father." *Id.* at  * 8.  The *c*ourt further stated that "[e]vidence of prior group sex involving [Gagne] and Bermudez and evidence of the complainant's invitation to Petitioner's father was an indication that it was not unusual or implausible for the complainant to engage in a "threesome." *Id.*

Petitioner Swathwood subsequently filed an "Amendment for Supplemental Authority" for the purpose of bringing to the Court's attention the grant of habeas relief to his co-defendant and requesting that this Court engage in the same analysis and arrive at the same conclusion so that Petitioner can likewise be granted habeas relief in this matter.

---

> . . . *Defendants* argue that the complainant's prior consensual participation in a threesome with Gagne tends to show that the complainant ins not averse to such conduct, which is probative of whether she consented in the instant case. . . .
>
> . . . *Defendants* argue that without this evidence that group sex was not foreign to the complainant, the jury likely would reject a consent defense because the incident involved more than one partner. . . .

2003 WL 1880143 at * 2 (emphasis added.)

  [4]  On July 31, 2007, the State filed a Notice of Appeal with the United States Court of Appeals for the Sixth Circuit.  Then, on August 7, 2007, the State filed a motion to stay the district court's July 2, 2007 judgment pending resolution of the appeal.  On August 29, 2007, the court granted the State's stay motion, and ordered that Gagne remain in custody pending his appeal.  As of this date, Gagne's appeal still is pending before the Sixth Circuit.

## IV. Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determinate of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. §2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 412-23 (2000). "Avoiding these pitfalls doesn't require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Parker,* 537 U.S. 3, 8 (2002)(per curiam opinion) (emphasis in original). "Further, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baez v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004).

## V. Discussion

**A.     Procedural Default**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel,* 526 U.S. 838, 839 (1999).  A habeas petitioner has not exhausted his claims in state court unless he has "properly presented" his claims to a state court of last resort.  *Id.* at 848.  When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available, or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.  *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir.2000).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman v. Thompson,* 501 U.S. 722, 750 (1991), if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F. 3d 155, 160 (1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review. *United States v. Frady,* 456 U.S. 152, 167-69 (1982).

In this case, Petitioner admittedly failed to file his delayed application for leave to appeal with the Michigan Supreme Court within the fifty-six day time period allowed under the Michigan Court Rules for doing so.  *See* M.C.R. 7.302(C)(2).  Therefore, Petitioner procedurally defaulted upon all claims he raised on appeal relative to this matter and, such claims are not subject to habeas review. However, a federal district court will consider the merits of procedurally defaulted claims in a habeas petition where the petitioner "show[s] (1) that there was cause for the default and prejudice resulting from the default, or (2) that a miscarriage of justice will result from enforcing the procedural default

in the petitioner's case." *Lancaster v. Adams,* 324 F.3d 423, 436 (6th Cir. 2003) (enumeration added).      **1. *Cause & Prejudice***

To establish "cause" for a state procedural default, a habeas petitioner must show that some objective factor external to the defense impeded efforts to comply with the procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). As set forth above, Petitioner in this case not only offers no "cause" for his failure to file the delayed application for leave to appeal timely, but neglects to assert any explanation or justification for his procedural default. Petitioner only admits to the untimely filing. He blames the Deputy Clerk of the Michigan Supreme Court for the Court's inability to review the merits of Petitioner's delayed application since it was rejected and returned as untimely without the Court having had an opportunity to see it. If a petitioner fails to show "cause" for his procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith v. Murray,* 477 U.S. 527, 533 (1986). Therefore, Petitioner has failed to demonstrate cause or prejudice relative to this matter.

### 2. *Fundamental Miscarriage of Justice*

The narrow exception for fundamental miscarriages of justice requires a habeas petitioner to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388, 124 S.Ct. 1847 (2004); *Murray v. Carrier*, 477 U.S. 488, 496 (1986).

Petitioner first argues that since his co-defendant was granted habeas relief on an evidentiary issue (i.e., exclusion of certain evidence about the complainant) that Petitioner likewise raised in his appeal and habeas petition; the two were tried together at trial; and and they jointly appealed their convictions, it would amount to "manifest injustice" and would be a "miscarriage of justice" for Petitioner not to receive the same habeas relief. (Petitioner's Amendment for Supplemental Authority, pp. 2-3). Furthermore, Petitioner cites case law that stands for the proposition that it

would be "manifestly unjust" for a defendant to be granted a new trial due to an evidentiary error, while his co-defendant is not granted the same relief, when the two defendants were jointly tried and jointly appealed their convictions. *United States v. Olano,* 934 F.2d 1425, 1439 (9th Cir. 1991), *reversed on other grounds,* 62 F.3d 1180 (1995).

Addressing Petitioner's first point, the Court agrees that despite his procedural default and failure to establish "cause" for the default, in extraordinary cases where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented. *Murray v. Carrier,* 477 U.S. at 479-80. The concept of "actual innocence" is directly linked to Petitioner's "miscarriage of justice" argument:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup v. Delo,* 513 U.S. 298, 321 (1995). Actual innocence means "factual innocence not mere legal insufficiency." *Bousley v. U.S.,* 523 U.S. 614, 623-24 (1998).

The actual innocence standard is a stringent one. As the Court in *Schlup* emphasized, to overcome a procedural default in a habeas case:

> [A]ctual innocence does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that *no reasonable juror would have found the defendant guilty*. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

513 U.S. at 329 (emphasis added).

The Court reiterated this stringent standard in *House v. Bell*, 547 U.S. 518 (2006):

> [P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. . . ." This

11

formulation, *Schlup* explains "ensures that petitioner's case is truly 'extraordinary,' while still pro- viding petitioner a meaningful avenue by which to avoid a manifest injustice. . . .

\* \* \*

[S]everal features of the *Schlup* standard bear emphasis. First, although "to be credible," a gateway claim requires "new reliable evidence -- whether it be exculpatory, scientific evidence, trustworthy eyewitness accounts or critical physical evidence -- that was not presented at trial, . . ." *Schlup* makes plain that the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial. . . ." Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.

Second, it bears repeating that the *Schlup* standard is demanding and permits review only in the "extraordinary" case. . . . A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. . . .

547 U.S. 539-39 (citations omitted).

Based upon the foregoing, Petitioner's first point relative to his "miscarriage of justice" argument, fails for four reasons.

First, Petitioner does not assert that he is actually innocent of the crimes on which he has been convicted; he argues only that since his co-defendant received habeas relief, he should likewise be entitled to such relief. Second, Petitioner has produced no new reliable evidence in support of his innocence. Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence that was not presented at trial." *Paffousen v. Grayson,* No. 00-1117, 2000 WL 1888659 \*3 (6th Cir. Dec. 19, 2000). Third, Petitioner's co-defendant did not argue actual innocence in his habeas petition, and therefore, Petitioner cannot attempt to piggy back on that claim in order to receive habeas relief. Finally, Petitioner does not contend that he is factually innocent, but rather hinges his argument in

favor of habeas relief upon his and his co-defendant's claim of legal insufficiency relative to the trial court's exclusion of certain facts about the complainant's past sexual activity.  Therefore, Petitioner has failed to meet the fundamental miscarriage of justice exception.[5]

For the foregoing reasons, the Court concludes that Petitioner's procedural default precludes federal habeas review.

As for Petitioner's second position, which is based upon case law allowing the same result for two similarly situated co-defendants, Petitioner's argument likewise fails for three reasons. First, the case law relied upon by Petitioner is not factually on point as the courts in those cases were not confronted with a procedural default issue in a habeas corpus context.  Secondly, the case law upon which Petitioner relies cites to Federal Rule of Appellate Procedure 2 as the authority to allow co-defendants to add issues while on direct appeal in the *court of appeals* so that they can be on equal footing upon appellate review with their co-defendants.  The federal appellate rules were relied upon because the defendants in those cases were convicted of federal crimes in their respective district courts and were appealing the district court's decision to the circuit court of appeals.  Fed. R. App.

---

[5]   Even assuming *arguendo* that the excluded evidence of threesome sexual activities may be recognized as "new evidence" sufficient to question whether Petitioner is "actually innocent" of criminal sexual conduct, as *Schlup* and *House* make clear, it is only when, in light of the excluded evidence -- *and all of the other evidence presented at trial* -- "no juror acting reasonably, would have voted to find him guilty beyond a reasonable doubt," that actual innocence is established.  And, without this "actual innocence" showing, Petitioner cannot establish that there has been a "fundamental miscarriage of justice."

This was not a sexual assault case that rested solely on the testimony of the complainant.  The complainant's examining physicians also testified about bruises on the complainant's breast and buttock, and her vaginal and rectal bleeding.  The jury also heard the testimony of both of the defendants and several defense witnesses.  Furthermore, the jury was presented with evidence of at least one prior incident of group sex involving the complainant, Petitioner, and his co-defendant.  Additionally, Gagne testified that the complainant invited Petitioner and David Stout to join her and Gagne in sexual activity on the night in question.  Under these circumstances, the Court cannot say that the state court committed a "fundamental miscarriage of justice" in excluding evidence of two additional instances of threesome sex involving the complainant.

13

P. 2 allows for the federal rules to be overlooked by the *court of appeals* in cases where there is good cause or manifest injustice. Therefore, if a party has defaulted on an issue in his appeal, Fed. R. App. P. 2 provides the *court of appeals* with discretion to ignore the default in the interest of justice and upon good cause shown.[6]

The Federal Rules of Appellate Procedure, however, are not applicable to actions in district court. *Rawson v. Sears, Roebuck & Co.,* 678 F.Supp. 820, 822 (D.Colo. 1988). Fed. R. App. P. 1(a) provides:

> (1) These rules govern procedure in the United States courts of appeals.
>
> (2) When these rules provide for filing a motion or other document in the district court, the procedure must comply with the practice of the district court.

Fed. R. App. P. 1(a). Therefore, Petitioner is unable to invoke Fed. R. App. P. 2 in an effort to persuade the Court to overlook his procedural default in this habeas action.

Finally, the terms "miscarriage of justice" and "manifest injustice" have specific meanings as detailed above in the context of a procedural default in a habeas corpus case. As indicated, Petitioner has not demonstrated that he may invoke a "miscarriage of justice" exception because there has been no claim or showing of actual innocence. If all a petitioner had to do was turn to Fed. R. App. P. 2 to circumvent the procedural default rules, then the entire purpose behind exhausting state court claims, preserving trial court issues for appeal purposes, and filing state appellate pleadings timely would be vitiated, and the doctrine of procedural default would erode away.

Although the Court is aware that Petitioner's co-defendant was granted habeas relief, the co-

---

[6] Indeed, it appears that Petitioner himself had the benefit of such a procedure in his direct appeal. Petitioner did not move at trial for admission of the evidence of the complainant's threesome sexual activity with Gagne and Ruben Bermudez or of the evidence concerning the complainant's offer to participate in a threesome with Gagne and his father, and thus, failed to preserve the issue for appeal. Nonetheless, the appellate court allowed him to join in his co-defendant's arguments concerning the exclusion of this evidence.

defendant also exhausted his state court remedies and filed his appellate pleadings in a timely manner. Therefore, Petitioner and his co-defendant do not stand on equal footing with regard to habeas relief.[7] Since Petitioner has failed to show "good cause" or a "miscarriage of justice" in accordance with the procedural default rules, Petitioner's request for habeas relief is denied.

### VI. Conclusion

For all of the foregoing reasons,

IT IS HEREBY ORDERED that the Petitioner Donald Edward Swathwood's Petition for Writ of Habeas Corpus [Doc. #3-1, filed June 29, 2004] is **DENIED**.

s/Gerald E. Rosen<br>
Chief Judge, United States District Court

Dated: February 10, 2009

---

[7] Petitioner's reliance on the Ninth Circuit's decision in *United States v. Olano*, *supra*, 934 F.2d 1425, is misplaced. *Olano* did not involve a habeas case; rather it involved the joint *direct appeal* of two co-defendants. Furthermore, unlike the instant case, the co-defendants in *Olano* stood on equal footing.

*Olano* involved a direct appeal of two co-defendants, Guy Olano and Raymond Gray. For purposes of this case, the relevant issue presented was whether a defendant who had not raised an issue in his appellate brief should be permitted to adopt, at oral argument, the issue which had been properly raised by his co-defendant. Gray did not raise in his brief the issue regarding the district court's deviation from the procedural requirements of Fed. R. Crim. P. 24(c) with regard to the propriety of the presence of alternate jurors in the jury room during deliberations, which turned out to be the determinative issue for purposes of the appeal. However, at oral argument, Gray requested that he be allowed to adopt Olano's appellate arguments regarding the alternate jurors issue. The court noted that, ordinarily, each defendant's appeal is limited to the issues specifically raised and argued in his brief, but that Rule 2 of the Federal Rules of Appellate Procedure gives the court discretion to suspend the Rules for "good cause shown," or if a failure to review an issue not properly presented would result in manifest injustice. The *Olano* court determined that "it would be manifestly unjust to reverse Olano's conviction and not Gray's when both suffered the same prejudice from the same fundamental error in the same trial," and, therefore, considered Olano's Rule 24 argument adopted by Gray for purposes of the appeal and the appellate decision. *Id.*

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 10, 2009, by electronic and/or ordinary mail.

                                          s/LaShawn R. Saulsberry
                                          Case Manager